Our next case for argument is United States v. Frederick Yurisich. I'm not sure that I pronounced that correctly. I gather either Ms. Stab or Ms. Glenn is going to go first. Go ahead. Good morning and may it please the Court. I'm Tracy Stab on behalf of Frederick Yurisich. Also with me at co-counsel is Lana C.C. Glenn. She represents Vera Yurisich. The oral arguments on these cases have been consolidated for purposes of appeal. I think I'll be taking up a majority of the initial oral argument and giving Ms. Glenn a small amount of time to address her issues. In this case, after paying the Yurisichs $45,000 for a legitimate personal injury claim, the government turned around and charged this elderly couple with the criminal charges of perjury for answers that they gave during a civil deposition. The deposition questions were asked by a United States, assistant United States attorney who had refused to give up discovery and was intending to trap the Yurisichs or was intending to set them up in a situation for perjury charges and then proceeded to ask vague questions during that deposition. No other civil litigant has the ability to pursue criminal charges as an additional tool in civil litigation. Thus, the United States Attorney's Office is in a unique position. In addition to that, the common law loathes perjury charges. Perjury statutes are narrowly construed and are not favored in the law. Given these two compelling factors, the United States Attorney's unique position and the suspect nature of perjury charges in general, we would ask the Court to take a very careful look at these perjury charges against the Yurisichs in this case. Unless the Court directs me otherwise, I'd like to start out with the second issue in Mr. Yurisich's brief, which is whether there is sufficient evidence in this case to convict him of perjury, given the vague nature of the questions and the fact that his answers could be literally true. There are two questions that were posed to Mr. Yurisich during his civil deposition. The first one is, are you able to engage in any outdoor activities with your grandchildren, like baseball, just throwing the ball around, or because of the shoulder injury? And his answer was no. The second question, if you went to use your shovel, would you feel that sharp pain in your shoulder? Answer, I assume so. Question, but you don't even try because of that? Answer, I don't. Correct. I don't shovel. Now, the government was in the position at the time it asked these questions to ask very specific questions, but it did not. It chose not to ask very specific questions. Instead, it asked these vague, generalized questions and never brought those generalized questions down to a very specific question. Now, the shovel question was pretty specific, was it not? The question was, you don't even try because of that. I don't. I don't shovel. And so the issue, and I'll get into that, is I do not shovel is a present tense answer to that. The video that the government has showed him shoveling, I believe, two or three months prior to that. So that's one of the issues that I will get into. So let's get into it now, because this seems to me, for Mr. Yurisich, the heart of his case, I do not shovel. So your argument is that does not mean that I didn't shovel in the past. Is that the nut of it? That's the nut of it. Can you throw the ball now was the question. I do not shovel now is the answer. Evidence of throwing the ball and shoveling was several months prior, and the government knew of this evidence when it asked the question, and it had the ability to ask the obvious question, have you ever shoveled since your injury? Have you ever thrown the ball since your injury? And, in fact, the government did ask that question prior in the deposition, and Mr. Yurisich said, yes, I have, but my ability to do so is limited now. So, again, that goes to the inconsistencies. Again, the Supreme Court's case in Braunston, which was, I believe, a 1973 case, said even if the answer is misleading, even if it's intentionally misleading, if it could be literally true, then it cannot form the basis of a perjury charge. So the question is, I do not shovel now, could be literally true, and therefore it cannot form the basis of a perjury charge. And the same goes for throwing the baseball. The government, in its response, attempts to narrow or, I guess, expand the time frame by saying, no, no, no, no, we all knew that it was since 2003 or since his injury, but that wasn't the question that was asked. And it could have been asked very easily. And it just demonstrates that the question could have been narrowed down in terms of the deposition. As for Vera Yurisich, it's a very similar situation. They were talking about the activities of Mr. Yurisich, and she said, well, he tried to lift a 15-pound dog food bag and paid for it. So he doesn't try to do things like that on a regular basis. No, not on a regular basis. Do you do all the outside work around the house? Yes. Okay. Were we talking about on a regular basis or, you know, ever? Again, and this case is very similar, or Vera Yurisich's and Frederick Yurisich's case are very similar to the facts in U.S. v. Sands, S-A-I-N-Z. And that's a 1985 Ninth Circuit case. In that case, the government, again, suspected the defendant of a conspiracy and so questioned the defendant before the grand jury and asked him about procedures. Do you do you have you ever failed to use this procedure without further defining procedure? And this Court said that that term was too general and couldn't support a perjury conviction, especially because previously or at some other time during the questioning when they'd asked about the procedure, he had said, well, generally, I use that procedure. And that's very similar to the question posed to Mrs. Yurisich, where she says on a regular basis. So, again, the government claims that the question asked was very specific. Could he throw the ball around with his grandchildren? It didn't ask that question. The question asked was, could you do outside activities like baseball or throwing the ball around? And, again, Mr. Yurisich had previously said, I could do it on a very limited basis. So it was incumbent upon the government at that point in time to ask, well, four months ago, did you throw the baseball around with your grandson? Or since this accident, have you ever thrown the baseball once with your grandson? They could have easily done that, but they didn't do that. They chose not to do that in this case. The second issue that I'd like to address to this Court is the vindictive prosecution. The district court denied Mr. Yurisich's motion to dismiss based upon vindictive prosecution, finding that they didn't even meet the prima facie burden in this case. So at this point in time, the only issue before this Court is whether the Yurisichs have met that prima facie burden. This Court does not need to decide the ultimate question, whether the charges were based on a vindictive intent, only whether the prima facie burden has been met. This would be similar to a summary judgment issue. Because there was no findings of fact and no evidentiary hearing, the Court should consider the evidence in a light most favorable to the moving party, which would be the Yurisichs. In this case, we have a civil United States attorney who's failing to produce evidence after a legitimate request. Now, the contention was that you asked too many interrogatories? That's correct, Your Honor. And possibly he did. But there is no similar limitation on the requests for production of evidence. And he requested production of these tapes. And the government responded, not applicable. So ‑‑ I guess one of the questions I have that makes this case difficult is that he sends out the interrogatories and requests, and they get answered August 30th. A couple days later, the Yurisichs attorneys, there's this letter basically threatening to compel. But he never does do a motion to compel. And then we have the depositions of the husband and wife. Then the information is revealed. And of course, the Yurisichs attorney says, well, it's kind of irrelevant information the way you've portrayed it. I don't really think it affects how this case should settle. But we never have any determination as far as I know by the trial court that there's been a discovery violation. Is that correct? That's correct, Your Honor. And certainly the trial court in this case was troubled by the lack of disclosure. And I don't know that it ‑‑ we're not raising a specific issue that there was a discovery violation. I think what it shows in this case is the intent of the prosecutor before the deposition. It goes to their motive. And especially with relation to the vindictive prosecution claim, it shows their motive when they ‑‑ before they even started this deposition. They were setting them up. And they were trying to set them up into this ‑‑ Well, you know, one of the problems with that is that's what discovery is all about. I mean, you don't lay out your impeachment evidence in a civil deposition as a matter of tactics and course generally. Now, whether that is improper does hinge on whether there's a discovery violation. So that's where I'm having some trouble, because I think the whole thing stinks personally, okay, the way it went down chronologically. But then when you step back and you look at what discovery is ‑‑ I mean, what deposition strategy can be, to say they're lying in the weeds is no different than any other civil discovery, assuming there hasn't been a discovery violation. So maybe you can kind of address that. Well, Your Honor, I think the additional factor in this case that's not present in other cases is that before this deposition, the civil attorney went in and met with the criminal attorney. And it's true that this is a ‑‑ you know, that issue about producing the evidence and, you know, maybe a motion to compel would have resolved it. Maybe there was a discovery violation. We don't know. But what the government had in its pocket in this case that most civil litigants don't have is the ability to go file criminal charges. So let's go sit down with the criminal prosecutors and figure out what it is I need to ask in order to set these guys up. So, again, it goes to their motive. And I don't think it's a good idea to do that. In addition, asking ‑‑ well, the refusal to turn over the tapes, the meeting with the criminal prosecutors, and then going into the deposition and asking vague questions. This evidence shows that but for the civil charges against the Urosiches, the government would not have brought these perjury charges. The court's order denying the motion to dismiss, I think, applied the wrong standard because the district court was looking ‑‑ the district court, first of all, was reluctant to presume vindictiveness based upon events occurring prior to trial. And I don't think the district court had the benefit of the recent Jenkins case for that. And then the court also determined that there was no appearance of vindictiveness based on circumstantial evidence because there was no showing of open hostility or punitive animus. And I think in that sense, the district court was really looking for a U.S. prosecutor that was angry and showing open frustration and aggression with the defendant. And honestly, after the Jenkins case, I don't think that's necessary. Instead, Jenkins points out that a showing of bad faith or maliciousness is no longer necessary. You look at the circumstances before, and if it tends to show that there is an appearance of vindictiveness, then the prima facie case is met and the burden shifts to the government to come forward with evidence to show a legitimate reason for filing these charges. I'm running low on my time. I'm going to try and reserve a little bit for my co‑counsel and possibly for rebuttal. Okay. That's fine. You've got ‑‑ there's six and a half minutes. Good morning, if it please the Court. The only thing I have to add with respect to the queries that were made of my co‑counsel, so to speak, during our consolidation I'd like to give your name for the record. I certainly will. My name is Lana C.C. Glenn, and I represent Vera Urisich. I wanted to point out in the excerpts at page 64 the discussion during the cross‑examination of Mr. Tilley by Ms. Dieter. And I think that that will give you a better picture of the role of Mr. Wilson, the prosecutor, having full knowledge of the tapes that were taken surreptitiously that were not provided, regardless of whatever reason there may have been for the lack of discovery. I would also like to point out that the ‑‑ with reference to the case that was just pointed out to you, the Jenkins case, that is clearly a case that is much more on point and I think clarifies the burden in terms of where the burden is to prove that this is a vindictive prosecution, and that the Rule 29 motion should have been granted. And likewise, adopting and incorporating the briefs that the motion to dismiss early on in the case should have been granted. Thank you. Good morning. May it please the Court. My name is Jill Bolton, and I represent the United States in this case. I was the prosecutor that tried this case. I was the prosecutor who made the charging decision and indicted the case. And I want to start out, because I'm concerned, especially with Judge McKeon's comment that this case stinks, I want to start out with the theme of this case, and that this case was about two individuals who tried to steal money, essentially, from the United States. Sued the United States for $2 million, trying to get money for a personal injury, which was incurred. The issue, the fact of liability was never disputed by the government. But it was not a $2 million injury. And what the defendants did in this case, both of them, is they tried to both ‑‑ Let me just stop you right there. The reason it stinks has to do with the sequence of the discovery. That says nothing, of course, about the plaintiffs. But, you know, to charge them with trying to steal money because they make a $2 million claim, if you've done a lot of personal injury for the government or anybody else, that's what they do. They make a lot of industry claims where they catch people, which you did. And they may well have been lying. I don't know. That's something for us to determine whether to uphold this. But people come in all the time and say, well, I've been injured, and I think my claim is worth $2 million. And then the attorney says, you're never going to get $2 million. We'll ask for $2 million. And then you settle in. In the end here, there was no liability question. And the question was how much damage is. So I think maybe we're getting a flavor of something. But for you to come in and say they were trying to steal from the government because they asserted in pleading a claim for personal injury damages seems to me to overstate the case by the United States government. Well, Your Honor, I disagree respectfully. These two individuals, both in their depositions, exacerbated, exaggerated profoundly the extent of the injury that they were claiming. But that's often the case. Exaggeration goes with these cases. Well, and I guess the point is, what really is the point of an oath when an individual sits down to take a deposition in a civil case? If it's not enforceable, if it's not warranted, there's no authority over it. Much is made about the fact that this case was both defended civilly by the United States Attorney's Office and then prosecuted criminally a year and a half after the settlement. No. And I think if we look at all of the cases that involve these perjury cases, especially the one I'm going to rely on most today, the McKenna case that this Court decided, if we look at that case, we see that's exactly the scenario that happened in that case. Let me ask this, Counsel. Before the deposition was taken, did the civil attorney general consult with the criminal? I'm glad you asked me that, because I'm really quite offended at the statement that was just made. And I have a great deal of respect for Ms. Staub. Answer yes or no. No, it did not happen. I didn't. I can tell you that I wasn't even in the office when this case was civilly defended. I was in the Yakima U.S. Attorney's Office, which is a division, a branch in Yakima. The civil attorney was in Spokane. There were no discussions prior to the deposition. But this is the question. Was a criminal attorney general consulted? No. None that I'm aware of, I can tell you that, and none that has ever been placed on the record. There were all kinds of pretrial hearings on this motion concerning prosecutorial vindictiveness. AUSA Wilson very well could have been called as a witness, served no purpose of the government, and we had nothing to hide. He was available. He was never out of the district or unavailable to be brought before the court. And the defendant never put him on. There was absolutely no evidence of that. And I submit to the Court there wouldn't be any. There were no such discussions. Could you also clarify another chronology event that might be helpful for us? The interrogatory requests were answered by the government just before or close to the time of the deposition. Was there any limit on requests for production as opposed to interrogatories? And did the requests for production cover videotape? The requests, and I am not a civil attorney, and I'm not as familiar with the civil rules, and we did not, I think, purposefully, because we were dealing with a perjury charge at the time this prosecutorial vindictiveness claim was brought in front of the district court, we purposefully, the judge said, we're not going to evaluate the civil case. That's not before this court. And so there was no finding on any of those issues. What I can tell you is that I presented to the district court, Judge VanSickle, all of the information concerning the discovery. And I believe I – So let me just stop. I mean, you can't really just duck out of it and say you're not a civil attorney here because you're standing here on behalf of the government trying to uphold a perjury conviction. So my question, and also defend against a charge of vindictive prosecution, which may or may not be fairly leveled. So my question is this, and maybe you don't know the answer, is whether there was any limitation on the production and whether the tapes would have been covered by that request. I'm not trying to dodge your question. What I would suggest is what I know, and it's limited to this. In the response to the interrogatories, an objection was made by the civil attorney covering the case, Mr. Wilson, on the basis of the federal civil rule concerning the numbers of answers and requests for production. And that's what I understood was the basis for the objection and the non-delivery of that evidence. Was the government's response, quote, not applicable, end quote? I don't believe that that was the government's response. I believe that the objection was that the request for the – and I think maybe they go hand in hand. The request was there's – the request was for – on the interrogatory whether or not there were any such documents or evidence, and there was an objection because it exceeded the number. And then I believe on the request for production, maybe that's where the not applicable statement that Ms. Staub referred to came in because they had not. And I think it related back to the interrogatory. That's my understanding. And certainly not applicable was misleading if it had been – the production request was made pure and simple. And to say not applicable, maybe the government would be involved in perjury. Well, I think – I understand the concern, but the issue here is in the context of a criminal perjury charge. And these statements were given in civil deposition, which is an adversarial process in civil discovery. And nothing was established in front of the district court that would say that what was done by the government was wrong. That's the facts that are before this Court. There's no indication of that. So it seems that at this stage what we're looking at is what do we know and what happened. What happened was we had two individuals who got into a deposition. And I want to read the portions of the deposition or at least refer in my briefs where I've quoted them. But Ms. Staub's recitation of perjury is inadequate, I think, for what you're looking at here. What we're evaluating is the context in which the answer was given. Was it clear? Was it plain to the person who's hearing the question what exactly the questioner was getting at? And there's no question in this context. What was an issue in the civil case was the extent of the year such as injuries. The question is related to a shoulder injury specifically. And the AUSA in the deposition asks a question of, well, what about your grandchildren moved back here in November of 2003? Placed completely in context. So since 2003, up to the date of this deposition, is the context. And then are you able to engage in any outdoor activities with them like baseball, just throwing the ball around, or because of the shoulder injury? No. You mean after the accident, not after the date of the deposition. I'm sorry, yes. I mean after the accident, right. Right. Because the AUSA is trying to establish the extent of the injury. But what he could do before the accident and what he could do after the accident. Right. Is that right? Right. Well, that would be pertinent to the shoulder injury and the liability of the government. On the second issue, it was very much placed in context. The defendant had seen a doctor who was the independent medical examiner for the civil case. And the doctor had asked him about the blister on his hand. This was about a week before the deposition. And leading up to the question about the shoveling was, where did this blister come from? And then the specific questions about the shoveling. And to suggest that now he was asking about whether today, the date of this deposition, you can shovel. And of course not. The context of this deposition was the defendant was injured, he sustained some form of injury, and he reportedly has recovered to a certain degree. So tell us how much you've been able to recover up until today, the day of the deposition. And he says very clearly, no, I don't. I don't shovel. I don't even try because of that. And as we relate back to this blister on his hand just a week before. Now, the jury was presented with this testimony of the deposition in the context of videotapes that showed him over the course of several days shoveling. The shoveling that led to this blister that Dr. Kirsten saw in his hand. There is great clarity, as was apparent to the jury in this case, that the defendant was hiding information about his injuries. He was hiding the fact that he had pretty much fully recovered. He had sustained an injury, pretty much fully recovered, but he wanted some more money from the government. And that's why, at the time of depositions, he exaggerated and exacerbated and outright committed perjury. The so in terms of sufficiency of the evidence, of course, this Court must look to it in the light most favorable to the government. Did the defendant understand the question? And if he did understand it that way, were his answers to the deposition false? The same with Vera Yurich. In the context of her statement, the question was placed in very specific context. Since the injury to his shoulder, your husband's shoulder, how has that changed? I guess I should start with his life. You heard his deposition. Yes. You heard his answers to all of the questions about his pain. Yes. Did you agree with those? Yes. Or absolutely. You heard his description about the limitations and what he can and cannot do. Yes. Do you agree with those? Yes. He can't rake leaves? No. Do you do all the outside work around the house? Yes. The riding lawnmower? Yes. Let me ask you about, apart from the ambiguity and the sufficiency of the evidence, let me ask you about materiality. This was a pretty lengthy deposition. They covered a lot of territory. The shoulder was just the incident with the playing ball with the grandkids, shoveling. Is all that really material? There was so much other stuff here in play in this deposition that apparently you don't question. You didn't claim that the whole deposition was a big lie. Well, you focused on two little, for him, two questions out of a whole batch of questions. For her, the same sort of thing. Her deposition was a little shorter. So why has this been so material in a jury, in a court trial, I guess? I can't remember now whether in a Federal Tort Claims Act case whether it's a jury or a court trial. Maybe it's just a court trial. But is that the question? I mean, I guess there's kind of two parts to that. One is what made me decide to charge just that one question and answer as opposed to all of the deposition? And it's just a discretionary call on how you charge a case. It doesn't mean that a good part of the answer is there. You argued before the jury that in the criminal case that those answers to those false questions, the false answers to those questions were material, could have had material influence on the trier of fact, which I guess would have either been a – I think would have been the judge. Right. The case actually had been – the civil case had actually been litigated. And I would point to this Court's decision in McKenna. A false statement is material if it has – if it would have a natural tendency to influence or was capable of influencing the decision of the judge in the Eurasych's lawsuit against the United States. That's what – that was – I'm sorry. That was the jury instruction the judge gave. In McKenna, this Court said, whether the statements alleged had a natural tendency to influence or were capable of influencing the magistrate's decision-making process in the civil trial. So – So it's essentially your position that the answers to these questions could have – Could have tipped the balance between 45,000 and I don't know, 100,000. Well, there's two ways that it can be material. One is if it can affect the outcome of the litigation. If taken as true that he can no longer throw a baseball with his kids, that's how badly his shoulder was injured. Or he can no longer do any of the work around the house. His wife has to do it all now. Or he can't even shovel, shovel his walkways in the winter, which can be pretty difficult as for Washington. If he can't do those things because of this injury, then we owe him a lot more money. Absolutely, that's material. And second, does his answers, if not true, impact his credibility generally as a plaintiff in a civil lawsuit? And the answer to that is absolutely. That's a process that attorneys are trying to accomplish in a civil deposition, as I understand it, and that is to catch a witness in a lie, so that when they take the stand, they can impeach them. And they can say, you know, this person's story should not be held up as credible. And that affects the outcome of the trial. So it basically means that if you have labor and industry cases, this happens all the time. They take surreptitious films, and there's nothing wrong with that. I mean, that's definitely the way it's done when you're on the defense side. They take photos, they take films. But it basically sets up the possibility that every single deposition is the basis for a perjury charge, whether state or federal, wouldn't it? If you get to this narrow, if you slice it this thin, and you can take one question out of a day of deposition or half a day, is it your position that if any one of those answers is false, that that's the basis for a perjury charge? Well, if it's material. As this Court decided that materiality standard in McKenna, yes, that's the reason for the oath. What we want when we administer an oath in a civil deposition in a trial is for an individual to be compelled by that oath to give truthful testimony. And so, yes, when you take an oath, you take a risk that you are going to be subject to perjury charges if you provide false statements knowingly, and that those statements are material. Counsel, I'd like you to check. Let me ask another question with respect to Mrs. Yersuch. She really has a conviction based on question two, the question about the outside work. Is that correct? That's right. Okay. But then in that trial, she kind of explains or tries to explain around what she meant. Does that change your analysis at all? Well, I mean, she got to state her answer in the deposition, but then she got to explain it, but the jury just didn't buy it, basically. So how does that affect one way or the other, how we evaluate her conviction? Well, I think you evaluate it in the materiality context and in the requirements of the element of perjury. That is, was it a knowingly false statement? And what she did when she testified and said, well, it's outside work if it applies to me, was an implausible definition of outside work. And it was really quite ridiculous. It was her way to try to avoid criminal liability. I'm not sure if I'm understanding where you're trying to get with that, but if it's the idea that somehow she's trying to go after you. I'm trying to understand the effect of her kind of, quote, explaining it away, but the jury rejecting that explanation in the context of our standard of review. Right. And I think when this Court reviews a perjury conviction where there's one of two plausible interpretations and a jury decides to go with the government's theory, this Court reviews it in the light most favorable to the government. And so I think your analysis is that the conviction is affirmed. Let me ask one more question. I know we're close to out of time, but what does the side have to show to make a prima facie case for vindictive prosecution? Not that it would be sustained, but what would be the prime, what do they have to show for a prima facie case? One of two things. First, direct evidence of vindictiveness, which that's what troubled me, I guess, about Ms. Staub's statement is that she – Is that necessary for a prima facie case? That's one possibility. Okay. Certainly, if there's direct evidence of that, I agree. We should be getting to the next phase where the government's explaining itself. Okay. Or the second possible scenario is facts that warrant appearance of vindictiveness. And merely a sequence of events is not enough in that prima facie showing. Well, I think what the events are that are sequenced might be material. You know, I think it's very difficult in the context of this case, and is it okay for me to continue? Answer Judge Fletcher's questions, please. The – in the context of a perjury charge, this is always going to be the sequence of events, so I think it's very difficult based just on a sequence of events. I think in a perjury charge like this, you need to have what I think Ms. Staub tried to insinuate, and that is evidence of a discussion of how can we – how can we set him up for a perjury charge, because then I think we're mixing the criminal side with the civil side in an improper way. And there's simply no evidence of that, and I can state to this Court there was no engagement on the part of the United States as far as I am aware. So in other words, just so I can get – if I understand your point, we know he can throw a softball, a shovel, and all that stuff, but the government didn't know coming into the deposition that he would deny it. Right. Is that right? So he had every opportunity to say, I can throw a softball a little bit, or I can shovel a little bit. So you're saying it's really not setting him up in any way because you're not influencing how he will testify. Right. Is that the – Right. And in fact, in a civil case, he's got his attorney there with him explaining, which he did at trial in his own testimony, the civil attorney, that I explained to them that you have to tell the truth, and they fully understood that, and I could have interjected. I was there by their side when they were providing those answers to those questions at the deposition. It was up to the defendants whether or not they told the truth or whether they chose to lie. And in this case, they chose the latter, and their conviction should be affirmed. Okay. Thank you. See, I believe there was some rebuttal time left. I understand we have a very short amount of time here. I believe you have five minutes. Wow. I have more time than I thought. There was a question about whether there was a discussion between the civil and the criminal departments. And on – I'm looking at – It was before the deposition, if I'm not mistaken. Right. And I'm looking at Vera Juricich's excerpt of record on page 74. And down toward the bottom there, this is defendant – this is Frederick Juricich's attorney cross-examining Tilley, who was the investigator in the civil matter for the government. And Ms. Dieter asks Mr. Tilley, all right, so let me ask you my question again. Mr. Wilson had everything he needed to set Mr. Juricich up before the deposition answer. And my answer to that is that's not Mr. Wilson's call. He is a civil attorney, and that would have to be a call of the criminal attorney in our office. Right. Which relates back to the question I had asked you before about the conversations between yourself and the civil division and the criminal division before this deposition took place. Do you remember that question? Yes, I do. And you said you couldn't talk about the exact context of any of those conversations, right? Yes. But that they took place. Conversations took place. Yes. Okay. The record discloses that there were conversations between the civil division and the criminal division before this deposition took place. I think that unless the Court has any other questions, I'm going to step down. Thank you. No questions? Judge McKeown? No. Okay. Thank you. Thank you. We appreciate your arguments, and the matter will be submitted. Thank you. Thank you.
judges: Fletcher, McKeown, Paez